UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
HENRY BARRINGTON,

              Petitioner,     :

       -against-        :

WILLIAM LEE,             :

              Respondent.    :
-------------------------------x

8/14/13

REPORT & RECOMMENDATION
and
MEMORANDUM & ORDER

10 Civ. 6098 (GBD)(MHD))

TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:

   Pro se petitioner Henry Barrington seeks a writ of habeas corpus to challenge his 2003 conviction in the New York State Supreme Court, Bronx County, on two counts of Robbery in the First Degree and one count of Robbery in the Second Degree. Barrington was sentenced to two concurrent prison terms of twenty years and a single concurrent term of fifteen years. He is now serving that sentence.

   Petitioner seeks relief on the basis of five separate arguments. First, he complains that the State denied him certain procedural rights under New York law by not subjecting him to an arraignment, not allowing him to testify in front of a grand jury and not moving to dismiss at least one of the two first-degree robbery counts presented at trial on the basis that the firearms

involved in the robbery were inoperable. Second, Barrington asserts that he was denied the effective assistance of trial counsel because his lawyer did not move to dismiss the first-degree robbery count at issue based on the affirmative defense that the firearms were inoperable, did not "join in Respondent's instruction to the grand jury" and omitted to move to dismiss on speedy-trial grounds. Third, he argues that the trial court lacked subject-matter jurisdiction over his case. Fourth, he asserts that the trial court denied him his constitutional right to self-representation. Fifth, he insists that the State failed to comply with its disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448 (1961). In later filed papers, Barrington also asks the court, as he has in the past, to authorize discovery from respondent and to conduct an evidentiary hearing, requests that we have previously denied.

Respondent opposes the petition, arguing that some of these claims are procedurally barred, that the state-law claims are not cognizable in a habeas proceeding, and that all of the claims are meritless. Respondent also opposes any opening of discovery or a hearing.

2

We deny Barrington's application for discovery and a hearing, and recommend that the writ be denied and the petition dismissed.

I. <u>Prior Proceedings</u>

Petitioner's conviction stemmed from two robberies, one on November 1, 2001 and the other on December 22, 2001, at the 3M Discount Store on East 183rd Street in the Bronx. Both were carried out by the same two armed men. Immediately following the second incident, the police discovered Barrington lying in an alley behind the store, with a gun within three feet of him, and they arrested him after a store employee identified him as one of the robbers.

A. <u>The Indictment</u>

Upon arrest, Barrington was taken to hospital to treat a badly fractured leg. (Decl. of Rafael A. Curbelo, Esq., dated Feb. 10, 2011 (Dkt. No. 12) ("Curbelo Decl.") Ex. 2 at ¶ 5; Ex. 3 at ¶ 5; Ex. 15). He remained there until January 8, 2002. (<u>Id.</u> Ex. 2 at ¶ 5). In the interim, on December 28, 2001 a Bronx County grand jury returned an indictment, which was superceded with additional charges on January 8, 2002. (<u>Id.</u> Exs. 15-20).

3

In total the grand jury leveled 27 counts against Barrington. It charged him with five counts of first-degree robbery, six counts of second-degree robbery, four counts of third-degree robbery, a single count of second-degree assault, four counts of second-degree burglary, one count of third-degree burglary, three counts of fourth-degree larceny, three counts of fourth-degree criminal possession of stolen property, and two counts of fifth-degree possession of stolen property. (Id. Ex. 7 at 3).

B. Pretrial Motion to Suppress

Petitioner moved to suppress an exculpatory statement that he had made to the police when the first officer encountered him lying in an alley adjacent to the store that had just been robbed. Following testimony by the officer, the trial judge, the Hon. William Mogelescu, denied the motion. He also denied petitioner's application to suppress the identification of him by two store employees. (Wade/Huntley Hearing Tr., dated May 22, 2003 ("May 22, 2003 Tr.") at 39-47).[1]

---

[1] One witness identified Barrington as a robber at a show-up before his arrest, and the other identified him from a photo array at the precinct some days later. (May 22, 2003 Tr. 6-7, 9-12).

C. <u>The Trial</u>

Barrington went to trial on May 29, 2003 before the Honorable Edward Davidowitz, S.C.J., and a jury. At trial the State presented the testimony of the two store employees -- Mr. Lenford Malcolm and Ms. Tasha Gadson -- as well as that of three police officers. According to Mr. Malcolm and Ms. Gadson, on the evening of November 1, 2001 they were watching a television at the store, located at 541 East 183rd Street, when Barrington and a second man entered the store. Each was carrying a gun, and one placed his firearm against Mr. Malcolm's neck and said "Don't move." (Trial Tr. ("Tr.") at 302-04, 352-53, 408, 603-05). Mr. Malcolm turned and saw Barrington, who demanded "Give me all the money you got." (<u>Id.</u> at 3-4, 306, 486). When Malcolm responded that he had no money, defendant struck him and shoved him to the floor. (<u>Id.</u> at 304-05).

Petitioner's accomplice pulled Ms. Gadson away from the counter, where she was crouching, and forced her to open the cash register, from which he took all of the money. (<u>Id.</u> at 607-08, 654). The two men then forced the four customers then in the store to empty their pockets and took their money, as well as $3.00 from Ms. Gadson. (<u>Id.</u> at 609, 617, 651). Barrington then forced Malcolm to the rear office of the store. He seized $1,600.00 or $1,700.00

5

from a cabinet in the office and also took Malcolm's wallet, which contained either $60.00 or $70.00. (Id. at 307-09, 403-05, 414, 487, 609, 663). Petitioner then forced Malcolm back to the front of the store, where the accomplice struck him with a gun. The two men then forced all of the people in the store to lie on the ground, and fled. (Id. at 309-11, 610, 668).

In the wake of their departure, Malcolm and Gadson reported the robbery to the police. (Id. at 311, 675). Gadson testified that she had told the police that she could identify the robbers, and they therefore had her look through a collection of photographs at the precinct. (Id. at 676).[2]

On the evening of December 22, 2001, Malcolm and Gadson were once again watching television in the store, in the presence of two customers. (Id. at 613-15, 645). When Ms. Gadson went to the back of the store, a woman knocked on the front door, which was protected by a newly-installed buzzer system. Mr. Malcolm buzzed the door open, at which point Barrington stepped into the store

_____

[2] The parties stipulated that if a police officer named Kevin Carney had been called to testify, he would have stated that he had interviewed the store customers and Ms. Gadson, and that all disclaimed any ability to identify the robbers. (Id. at 735-36, 738-39).

6

directly behind the woman, as did his accomplice from the earlier robbery. (Id. at 313-16, 360, 462, 464-65, 610-11). Mr. Malcolm attempted to physically force the two men out of the premises. During the struggle the two assailants hit Mr. Malcolm 15 to 20 times on the head with their guns, causing him to bleed heavily. They threw him to the floor and then forced him to the rear of the store. (Id. at 314-17, 355, 465, 468-72, 488-89, 610-11). Barrington demanded Malcolm's money and took one dollar from his pocket. (Id. at 320, 479, 614, 641).

At that point, Barrington's accomplice, who had remained at the front, came to the rear office to tell Barrington that someone was peeking in the front window. When petitioner went to the front to look, Malcolm removed a panel that had covered a rear window and opened the window. As the two robbers entered the office once again, Malcolm leaped out of the window, falling 10 to 15 feet to a concrete alleyway below. (Id. at 321-22, 324, 361, 443, 454, 456, 489-91, 616). Petitioner and his accomplice then jumped out of the same window. (Id. at 617).

Malcolm's fall aggravated a prior ankle injury; as he limped along the alley, he heard what he described as a "boom", apparently Barrington landing on the ground. He also heard a gunshot. He

7

limped out of the alley and onto Bathgate Avenue. (<u>Id.</u> at 325-26, 361, 441-42, 444-45, 457-58, 462, 491).

As for Ms. Gadson, she had remained in the back office through these events. As soon as the robbers departed by the window, she called the police. (<u>Id.</u> at 618).

At the time of the robbery, an off-duty police officer, Jorge Hernaiz, was in a restaurant two storefronts from the 3M Discount store. Officer Hernaiz testified that someone reported that a robbery was in progress in that store, and he therefore asked someone else to call 911, left the restaurant, looked in the store, from which he heard loud voices and saw a commotion of some sort, but was unable to open the front door. He therefore waited for police backup to arrive. (<u>Id.</u> at 577, 579-80, 591). While waiting he observed Mr. Malcolm on the corner of 183rd Street and Bathgate Avenue. (<u>Id.</u> at 580-81). Malcolm was bleeding and limping, and shouted to the officer "They are over here", pointing towards 184th Street. (<u>Id.</u> at 581). As the officer approached Mr. Malcolm, he heard two gunshots. (<u>Id.</u> at 582).

Further details were offered by Police Officer George Sichler, who was driving a patrol car near 183rd Street, when he heard

8

several shots and a radio report of a robbery in progress and shots fired at 541 East 183rd Street. (Id. at 496, 574). He stopped the car at 183rd Street and Bathgate Avenue, radioed for assistance and exited the vehicle with his gun drawn. (Id. at 496-97, 514).

At this point Officer Hernaiz saw a thin Black male peeking out from the end of an alley at 2296 Bathgate Avenue. As the officer entered the alley, he discovered Barrington lying on the ground. Hernaiz pointed his gun at Barrington and told him not to move. (Id. at 582-84).

Moments later Officer Sichler, directed by people on the street, went to the alley and saw Officer Hernaiz crouched at the entrance to the alley with his gun drawn. Sichler went into the alley and held petitioner at gunpoint where he lay, next to garbage cans and garbage bags. (Id. at 497-99, 572, 586). He noticed no one else in the alley at that time, but observed that Barrington's leg was broken, with the bone protruding. (Id. at 500). Barrington at that time said "[T]hey just ran through here, knocked me down, stepped on my leg and broke it." (Id.).

While Officer Sichler waited in the alley, he observed a police lieutenant named McMahon recover a 9 mm. handgun and some

9

live 9 mm. cartridges next to some garbage bags, approximately three feet from where Barrington lay. (Id. at 501, 504, 508, 515, 523, 544-45, 568). According to Officer Sichler, the gun was jammed because a shell had not properly ejected. (Id. at 505). A subsequent ballistics report stated that this firearm was "inoperable as received due to a defective trigger assembly." (Id. at 517-19, 568). While en route to the hospital, Mr. Malcolm identified the recovered gun as the one used by one of the robbers. (Id. at 328, 363).

As Barrington lay in the alleyway, the police brought Ms. Gadson into his presence for a show-up identification. She identified him as one of the two robbers, at which point the police arrested him. (Id. at 513-14, 620, 689).

In a search of the crime scene, Police Officer Patrick Tunnock recovered some empty 9 mm. shell casings in the alleyway. In the store, the officer recovered an unspent cartridge in the front and a second one in the rear office. He also observed bloodstains on the floor. In front of the building next to the alleyway on 184th Street, he found another 9 mm. handgun "in pieces" and seven live 9 mm. rounds. (Id. at 508-10, 705, 710-11, 715-18, 718, 730).

10

Barrington did not put on a case at trial.


D. The Verdict


The court submitted to the jury two sets of first- and second-degree robbery counts concerning the November robbery. One set charged Barrington with the robbery of Mr. Malcolm and the other pertained to the robbery of Ms. Gadson. The jury also received one set of robbery charges addressing the December robbery, both for the robbery of Mr. Malcolm. The first-degree robbery charges were based on the allegation that the defendant had displayed a firearm during the robbery, in violation of N.Y. Penal L. § 160.15[4]. The second-degree version was premised on the charge that the robber had been aided by an accomplice, in violation of N.Y. Penal L. § 160.10[1]. In addition to instructing the jury on the elements of each of these charges, the court provided instructions on Barrington's asserted affirmative defense to the December first-degree robbery count based on the contention that the firearms in question were inoperable. (Id. at 846-61).


On June 10, 2003, the jury returned verdicts acquitting petitioner of the November first-degree robbery charge pertaining to Ms. Gadson but convicting him of second-degree robbery. At the

11

same time it convicted him of the two counts of first-degree robbery of Mr. Malcolm, one for the November robbery and the other for the December robbery. (Id. at 899-901).

E. The Sentence

On July 2, 2003, Justice Davidowicz sentenced petitioner as a second violent-felony offender. Based on that status he imposed two concurrent prison terms of twenty years on the first-degree robbery counts and a single concurrent term of fifteen years on the second-degree robbery conviction. (Curbelo Decl. ¶ 6 & Ex. 7 at 1).

F. Post-Sentence Proceedings

Following Barrington's conviction and sentencing, he undertook a long and tortuous process to air a multitude of challenges to his conviction. We summarize his efforts here.

Before pursuing an appeal, on or about June 9, 2004 petitioner filed a pro se motion in the trial court to vacate his conviction based on the contention that he had been denied the effective assistance of trial counsel. His criticisms of counsel were (1) that the attorney had not moved to dismiss at least one of the

12

first-degree robbery counts based on the inoperability of the
firearms used in the December robbery, (2) that counsel had not
moved to dismiss the indictment based on the fact that Barrington
had not been arraigned and had not been afforded the opportunity to
testify in the grand jury prior to his indictment, and (3) that the
lawyer had not moved to dismiss the case on speedy trial grounds or
to press Barrington's pro se motion to the same effect. (Curbelo
Decl. ¶ 7 & Ex. 1). Barrington's appointed appellate counsel
supplemented that motion with a declaration and memorandum of law
on December 3, 2004. In that submission counsel contended that the
failure to arraign petitioner before he was indicted on January 8,
2002 had effectively denied him his right to request to appear
before the grand jury and that his trial attorney's failure to
challenge the indictment on that basis amounted to ineffective of
assistance. The new submission also argued that the trial lawyer
should have moved to dismiss the first-degree robbery count
pertaining to the December 22 robbery because both firearms
recovered at the scene were later determined to be inoperable. (Id.
¶ 8 & Ex. 2). Following the filing of the State's opposition (id.
Ex. 3), defense counsel provided a reply in which she withdrew that
part of the motion that had invoked the trial lawyer's failure to
seek dismissal of the indictment. (Id. ¶ 10 & Ex. 4 at ¶ 2)(citing
inter alia People v. Brown, 14 A.D.3d 356, 789 N.Y.S.2d 106 (1st

Dep't 2005))).

By decision dated November 21, 2005, Justice Davidowicz denied the section 440.10 motion. In doing so the judge relied on two alternative grounds. First, he noted that relief on the Sixth Amendment claim targeting trial counsel's failure to seek dismissal of the first-degree robbery count was barred by N.Y. Crim. Proc. L. § 440.10(2)(c), because the claim could be reviewed on petitioner's direct appeal, which had not yet taken place. Second, he found the claim meritless since (a) counsel had performed to an acceptable level of professional competence and (b) the omitted motion to dismiss based on the alleged inoperability of the firearms would have failed since that affirmative defense was properly a matter for the jury to decide in view of the record evidence. (Id. ¶ 11 & Ex. 5).[3]

_____

[3] The judge also noted that Barrington's appellate counsel had withdrawn the claim -- previously articulated by petitioner as a pro se movant -- that was premised on the asserted denial of an opportunity to testify before the grand jury. (Id. at 1 n.1). The judge never addressed Barrington's other pro se argument, about his trial attorney's failure to file a speedy-trial motion. There is no indication that Barrington ever pursued that claim either on his appeal from the denial of the 440.10 motion or by a new 440.10 application, although he did refer to it in a later coram nobis critique of his appellate counsel. See pp. 23, 42 n.12, infra.

Petitioner sought leave to appeal from this decision to the Appellate Division, First Department. The court granted his application and consolidated that appeal with Barrington's direct appeal from his conviction. (Curbelo Decl. ¶ 12).

On Barrington's direct appeal he asserted three grounds to challenge his conviction. First, he attacked the denial of his motion to suppress the exculpatory statement that he had made before being given <u>Miranda</u> warnings -- specifically the reference to others having run past him in the alley and broken his leg. (<u>Id.</u> ¶ 13 & Ex. 6 at 19-26). Second, he contended that he had been denied a fair trial because the prosecutor, in summation, had alluded to the defense needing to offer an explanation for Barrington's presence in the alley, a comment that had assertedly shifted the burden of proof to the defense. (<u>Id.</u> Ex. 6 at 27-31). Third, he argued, as he had on his 440.10 motion, that trial counsel's failure to move to dismiss the second first-degree robbery count based on firearm inoperability had denied him the effective assistance of counsel. (<u>Id.</u> Ex. 6 at 31-34).

On November 13, 2006 the Appellate Division affirmed the conviction. <u>People v. Barrington</u>, 34 A.D.3d 341, 824 N.Y.S.2d 285 (1st Dep't 2006). In doing so, the court held that the trial judge

had properly denied suppression because the exculpatory statement by petitioner had been spontaneous. The panel also rejected Barrington's Sixth Amendment claim, noting that his trial attorney had appropriately invoked the affirmative defense of inoperability and had obtained a jury instruction on it, and observing that a motion to dismiss would have been futile since there was sufficient evidence for the jury to find that the damaged condition of the firearms had been caused by events immediately after the robbery. As for petitioner's attack on the prosecutor's summation, the court found it unpreserved and further noted that even if it had been preserved, the court would have rejected it as meritless. Id. at 341-42, 824 N.Y.S.2d at 286.

Petitioner sought leave to appeal to the New York Court of Appeals from the decision of the First Department. By order dated December 19, 2006, the Court of Appeals denied that leave application. People v. Barrington, 8 N.Y.3d 878, 832 N.Y.S.2d 490 (2006).

In late January 2007, petitioner moved for the second time to vacate his conviction. (Curbelo Decl. ¶ 16 & Ex. 9). In support of this pro se motion he contended (1) that the prosecutor had violated his obligation under Brady and Rosario by falsely

16

representing that all relevant documents had been produced when, in fact, a number of police reports and other materials had been withheld, (2) that defense counsel had been constitutionally ineffective by agreeing with the prosecutor that all documents had been disclosed and by not sharing some documents with his client, (3) that the trial judge had erred in relying upon a 1992 conviction to deem him a second violent felony offender because the sentencing judge in 1992 -- coincidentally also Justice Davidowicz -- had not taken his oath of office for a second term at the time that he imposed sentence, and (4) that his indictment in the current case was null and void for obscure reasons seemingly related to the absence of any contract between petitioner and New York State and the United States. (Id.).

In April 2007, while this most recent motion was still pending, Barrington filed an application to renew his first 440.10 motion -- which had been denied in 2004 -- on the basis that new evidence had purportedly emerged to support his prior arguments -- specifically, he had since learned that the State had obtained an initial indictment on December 28, 2001, which was then superceded by the January 8, 2002 indictment. (Id. ¶ 18 & Ex. 10 at ¶ 8). The suggested implication was that the State had violated his supposed right to be notified of the grand jury proceeding. The State

17

opposed both the second 440.10 motion and the requested renewal of the first. (<u>Id.</u> at ¶¶ 17, 19).

While these applications were pending, Barrington filed a separate habeas corpus petition, dated January 16, 2008, in New York State Supreme Court, Dutchess County. (<u>Id.</u> ¶ 20 & Ex. 11). In that application he argued that the indictment was invalid because the Bronx District Attorney had not properly filed the true bill and because the State had failed to advise him of his right to testify before the grand jury.

Continuing his wave of filings, Barrington added an addendum on April 16, 2008 to his second 440.10 motion, which was still pending before Justice Davidowicz. (<u>Id.</u> ¶ 21 & Ex. 12). In that submission he added an array of claims. Thus he asserted that his trial counsel had been ineffective because (1) he had failed to advise the trial court that Barrington wanted to proceed <u>pro</u> <u>se</u>, (2) he had lied to the court by stating that all relevant documents had been turned over by the prosecution, (3) he had failed to obtain all relevant documents, (4) he had failed to challenge the trial court's <u>Antommarchi</u> ruling, which had authorized voir dire

bench conferences in his absence,[4] (5) he had threatened petitioner with physical injury to coerce him to drop his demand to proceed pro se, (6) he had failed to call an alibi witness, (7) he had not advised petitioner that he could testify at the suppression hearing, and (8) he had failed to obtain the trial judge's oath-of-office card. Apart from these Sixth Amendment claims, Barrington challenged the performance of the trial court in a number of respects, contending that (1) it had erred in denying a request by Barrington to represent himself, (2) it had overstepped its authority by coercing Barrington into waiving his right to be present during voir dire, (3) it had rendered an improper Sandoval ruling, and (4) Justice Davidowicz, who had presided over Barrington's 1992 conviction, had not taken an oath of office before sentencing him in that earlier case. Barrington also complained that he had been denied his rights under Brady and Rosario and that the trial court had erred in sentencing him as a predicate felon because his prior conviction was more than ten years old at the time.

On August 1, 2008 the Dutchess County Supreme Court denied petitioner's habeas corpus petition. (Id. ¶ 22 & Ex. & Ex. 13). In

---

[4] The reference is to People v. Antommarchi, 80 N.Y.2d 247, 590 N.Y.S.2d 33 (1990).

doing so the court ruled that habeas relief was unavailable because all of Barrington's claims could have been asserted either on direct appeal or by way of a section 440.10 motion. Alternatively, the court noted that habeas relief would be improper because none of the claims asserted by Barrington, even if upheld, would have justified his immediate release.[5]

Barrington's losing streak was extended on December 24, 2008, when Justice Davidowicz (1) denied his application to renew his first 440.10 motion, (2) denied his second 440.10 motion and (3) rejected the claims embodied in his April 16, 2008 addendum. (Id. ¶ 23 & Ex. 14).[6] In rejecting the renewal request, the court noted that the argument for a right to be notified of the grand jury proceeding had earlier been withdrawn by Barrington's counsel and that Barrington was offering no new basis to support the resuscitation of the claim, which was in any event meritless. As for the second 440.10 motion, the judge initially addressed the

---

[5] Although not mentioned by respondent, it appears that at some stage Barrington unsuccessfully sought leave to appeal this decision up through the New York Court of Appeals. See People ex rel. Barrington v. Ercole, 13 N.Y.2d 709, 2009 WL 3379927 (Oct. 22, 2009).

[6] This decision is reported as People v. Barrington, 21 Misc.3d 1149(A), 2008 WL 5381471 (Sup. Ct. Bronx Cty. Dec. 24, 2008).

oath-of-office point, noting that a failure to comply with the oath requirement does not affect the validity of the officer's performance of his official duties. (Curbelo Decl. Ex. 14 at 5-6). As for Barrington's self-representation claim, the court observed that it was barred by virtue of his failure to assert it on his first 440.10 motion and that in any event it was meritless since Barrington had withdrawn the request to proceed pro se after (1) receiving the mandatory judicial warnings about the perils of proceeding in that fashion and (2) consulting with his trial attorney. The judge also rejected as "baseless" Barrington's claim that his attorney had coerced the withdrawal of his request by threatening him with physical harm. (Id. Ex. 14 at 6-7).

The court also rejected the balance of Barrington's Sixth Amendment complaints about trial counsel. Specifically, it held that the allegation that counsel had not called an alibi witness was procedurally barred since petitioner had not raised it in his first 440.10 motion, and that in any event it was meritless in view of both (1) Barrington's failure to identify this asserted alibi witness or any details of his proposed testimony and (2) his attorney's representation that he recalled no reference by his

former client to the existence of an alibi witness.[7] (<u>Id.</u> Ex. 14 at 7-8).

As for the <u>Antommarchi</u> point, the court rejected petitioner's argument. It observed that Barrington had explicitly withdrawn his request to be present at the side-bar during voir dire and had represented that he did so on the advice of counsel. The court also rejected petitioner's contention that the judge had improperly pressured him to waive the right to be present. (<u>Id.</u> Ex. 14 at 8).

The court next rejected petitioner's bizarre argument that the federal government and the State were separate corporations that could not enter into contracts, thus somehow voiding his conviction. As the court noted, the claim was procedurally barred and in any event meritless. (<u>Id.</u> Ex. 14 at 8-9).

Finally, addressing the petitioner's addendum, the court noted that Barrington had obtained copies of thirty police reports and other documents through a request under the New York Freedom of Information Law ("FOIL") and that these documents had not been

---

[7] The notion of an alibi witness seems particularly bizarre since there was no question that Barrington was discovered, in an injured state, at the scene of the crime.

produced to defense counsel at the time of trial. Going through each document, the court found that some were _Rosario_ materials that should have been produced and that others were not. That said, the court also found that the withholding the _Rosario_ materials had been inconsequential because the testimony of the witnesses was entirely consistent in all material respects with their pre-trial statements. (_Id._ Ex. 14 at 9-15). As for plaintiff's _Brady_ claim, the court determined that none of the documents was sufficiently material to justify relief since the statements that they reflected were consistent with the trial testimony. (_Id._ Ex. 14 at 15-16).

In January 2009 petitioner sought leave to appeal to the Appellate Division from Justice Davidowicz's denial of his second 440.10 motion and the addendum. (_Id._ ¶ 24). On March 5, 2009 the First Department denied that application. (_Id._ ¶ 25).

On or about September 29, 2009, petitioner moved in the Appellate Division for a writ of error _coram_ _nobis_, claiming that his appellate attorney had been constitutionally deficient. (_Id,_ ¶ 26)[8]. The Appellate Division denied that application on December 29, 2009. (_Id._ ¶ 27).  He next sought leave to appeal that denial

---

[8]A copy of petitioner's _coram_ _nobis_ application is included in a stack of documents accompanying Barrington's traverse.

to the New York Court of Appeals, which in turn denied his request on April 22, 2010. (Id. ¶ 28).[9]

Having been rebuffed by the state courts, Barrington turned to this court, filing a petition with the Pro Se Clerk of the Court in August 2010.

ANALYSIS

Before addressing petitioner's claims, we summarize the basic standards that govern the assessment of habeas petitions.

I. Standard of Review

The stringency of federal habeas review turns on whether the state courts have passed on the merits of a petitioner's claim, that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (discussing 28 U.S.C. § 2254(d)). If the state court has addressed the merits, the

---

[9] See People v. Barrington, 14 N.Y.3d 838, 901 N.Y.S.2d 144 (2010).

petitioner may obtain relief only if the state court's ruling

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See, e.g., Bell v. Cone, 535 U.S. 685, 693-94 (2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring); Besser v. Walsh, 601 F.3d 163, 178 (2d Cir. 2010), vacated on other grounds sub nom. Portalatin v. Graham, 624 F.3d 69 (2d Cir. 2010) (en banc); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Brown v. Artuz, 283 F.3d 492, 498 (2d Cir. 2002).


Clearly established federal law "'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" Howard, 406 F.3d at 122 (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)). "[A] decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decided a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" Id. (quoting Williams, 529

U.S. at 413). <u>See also</u> <u>Marshall v. Rodgers</u>, 133 S.Ct 1446, 1450
(2013).

What constitutes an "unreasonable application" of settled law
is a somewhat murkier proposition. "'A federal court may not grant
habeas simply because, in its independent judgment, the "relevant
state-court decision applied clearly established federal law
erroneously or incorrectly."'" <u>Howard</u>, 406 F.3d at 122 (quoting
<u>Fuller v. Gorczyk</u>, 273 F.3d 212, 219 (2d Cir. 2001) (quoting
<u>Williams</u>, 529 U.S. at 411)). The Supreme Court observed in <u>Williams</u>
that "unreasonable" did not mean "incorrect" or "erroneous," noting
that the writ could issue under the "unreasonable application"
provision only "if the state court identifies the correct governing
legal principle from this Court's decisions [and] unreasonably
applies that principle to the facts of the prisoner's case." 529
U.S. at 410-13. As implied by this language, "'[s]ome increment of
incorrectness beyond error is required . . . [H]owever . . . the
increment need not be great; otherwise habeas relief would be
limited to state court decisions "so far off the mark as to suggest
judicial incompetence."'" <u>Monroe v. Kuhlman</u>, 433 F.3d 236, 246 (2d
Cir. 2006) (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir.
2000)); <u>accord</u> <u>Richard S. v. Carpinello</u>, 589 F.3d 75, 80 (2d Cir.
2009).

Under the Supreme Court's more recent, and arguably more stringent, interpretation of the statutory language, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. Under this more recent interpretation, a federal habeas court has "authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Id. In other words, to demonstrate an "unreasonable" application of Supreme Court law, the habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

27

As for the state courts' factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Richard S., 589 F.3d at 80-81; McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003); see also Rice v. Collins, 546 U.S. 333, 338-39 (2006).


II. Purported Violations of State Laws


In articulating the first ground for relief, petitioner offers a potpourri of complaints about "respondent" denying him various of his rights under state law, and he articulates a theory that the violation of state-law protections can be interpreted as a denial of his federal constitutional right to due process. (Pet., filed Aug. 16, 2010 (Dkt. No. 1) ("Pet.") at ¶¶ 18-21). Respondent argues that this collection of allegations is procedurally barred because Barrington failed to exhaust his state-court remedies and has no currently available state-law remedies. Alternatively, respondent argues that the claims are not of federal dimension and hence not cognizable in a habeas proceeding and are in any event meritless. (Resp.'s Mem. of L. in Opp'n (Dkt. No. 12) ("Resp.'s Mem.") at 8-15).

28

Although petitioners are required to exhaust their state-court remedies before seeking habeas relief, see, e.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004), in the event that the claim in question is plainly meritless, we may bypass the exhaustion question in favor of addressing the merits. 28 U.S.C. § 2254(b)(2). See, e.g., Mannix v. Phillips, 619 F.3d 187, 196 (2d Cir. 2010). In this instance, since the claims encompassed in Barrington's first ground for relief are plainly groundless, we choose that option.

The specific complaints that petitioner articulates are (1) that the State failed to subject him to an arraignment, (2) that it denied him the right to testify before a grand jury and (3) that it did not move to dismiss one of the first-degree robbery counts because the firearms used there were inoperable. (Pet. ¶ 20). These complaints are not of constitutional dimension, and they are also meritless.

Habeas proceedings are limited to the consideration of claims arising under federal law. E.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Evans v. Fischer, 712 F.3d 125, 133 (2d Cir. 2013). In this instance, none of the petitioner's complaints can be said to reflect non-compliance with any federal-law requirement. Moreover, the facts reflected in the record before us demonstrate

that the rights that petitioner invokes were not violated.

The New York Criminal Procedure Law requires that when a defendant is arrested without a warrant, the police officer must bring that person "without unnecessary delay . . . before a local criminal court and file therewith an appropriate accusatory instrument." N.Y. Crim. Proc. L. § 140.20[1]. Absent "an acceptable explanation", a delay of more than 24 hours in accomplishing these steps is presumptively violative of this provision. <u>People ex rel. Maxian v. Brown</u>, 77 N.Y.2d 422, 426-27, 568 N.Y.S.2d 575, 576 (1991). Once a defendant has been detained and a felony complaint filed -- as was done here (Curbelo Decl. Ex. 1 at 10th pg.) -- the defendant will be entitled, with certain exceptions, to be released on his own recognizance if he has been held in custody for more than 124 hours (or 144 hours if a Saturday, Sunday or holiday intervened). N.Y. Crim. Proc. L. §§ 180.80(1)-(3). The court need not grant that application, however, if the prosecutor has previously filed "a written certification that an indictment has been voted." N.Y. Crim. Proc. L. § 180.80(2)(a).[10]

---

[10] The statute also provides that release is not mandatory if "[t]he failure to dispose of the felony complaint or to commence a hearing thereon during such period of confinement was due to a defendant's condition . . .". (<u>Id.</u>).

As for a defendant's right to appear before a grand jury, the Criminal Procedure Law recognizes such an entitlement if the defendant serves on the District Attorney a written notice making such a request. The same provision further states, however, that the prosecutor is not obliged to inform the defendant that a grand jury proceeding is pending unless the defendant has been arraigned on a criminal complaint embodying the charges that the grand jury is considering. N.Y. Crim. Proc. L. § 190.50(5)(a).

In Barrington's case, he was arrested on December 22, 2001 while lying in the alleyway with a severely broken leg. He was immediately sent to the hospital for an extended time -- his release not occurring until January 8, 2002 -- and indeed was deemed a candidate for surgery. (Curbelo Decl. Ex. 3 at ¶ 5, Ex. 12 at 20, Exs. 15 & 17). There is no question that the State filed a felony complaint timely (see id. Ex. 1 at 10th pg. (Felony complaint filed Dec. 23, 2001)), and there is also no dispute that the petitioner was not arraigned while he was in the hospital. (See letter to the Court from Raphael Curbelo, Esq., dated Jan. 31, 2013 at 1st page). The State obtained the first version of an indictment on December 28, referring solely to the December robbery -- the timing having apparently been dictated by the need to forestall a possible application for release by the petitioner. (Id. Ex. 10 at

31

p. 5). The prosecutor did not advise Barrington or his counsel about that proceeding since petitioner had not been arraigned, and he never requested to appear before the grand jury. On January 8, 2002, the grand jury returned a superceding indictment adding charges concerning the November robbery. (Id. Exs. 19-20).

The most obvious defect of petitioner's attempt to use this scenario as a basis for challenging his conviction is that any rights that he might be claiming were violated are purely a product of state law and thus not cognizable on a habeas petition. The further problem is that he fails to demonstrate that his rights -- whether state or federally based -- were violated. Although Barrington was arrested on December 22, 2001, he was apparently in no condition to be arraigned at that point. His leg was badly fractured, and he was rushed to the hospital, where he remained for approximately two and a half weeks, with surgery contemplated, as reflected in the Assistant District Attorney's notes. (Id. Ex. 15). That circumstance is presumably an "acceptable explanation", Maxian, 77 N.Y.2d at 426-27, 568 N.Y.S.2d at 576, for not arraigning him during that time period.

As for the grand jury proceedings, the District Attorney submitted the case to the grand jury and obtained an indictment by

32

December 28, 2001 -- timing that was plainly influenced by the statutory consideration that if the petitioner remained in custody for more than 144 hours he could apply for release on his own recognizance. (Curbelo Decl. Exs. 15-17). Moreover, since petitioner was not arraigned, the prosecutor had no obligation under state law to advise him of the pendency of the grand jury proceeding, as petitioner's appointed counsel ultimately conceded. Finally, in any event the denial of an opportunity to the defendant to testify in the grand jury does not transgress any constitutional or other federal right. See, e.g., Davis v. Mantello, 42 Fed. Appx. 488, 490-91 (2d Cir. May 22, 2002); Batchilly v. Nance, 2010 WL 1253921, at *30 (S.D.N.Y. Apr. 2, 2010).

As for petitioner's complaint that the State did not move to dismiss the first-degree robbery count related to the December robbery, that claim also fails as a matter of law. Although petitioner seems to assume that the firearms used in the robbery were inoperable at the time and suggests that this required a dismissal of the robbery charge, he does not suggest any legal principle -- whether federal or state -- that would have compelled the prosecutor to seek dismissal. Indeed, under New York law the inoperability of a firearm is an affirmative defense to a first-degree robbery charge premised on the use of a firearm, and hence

the defendant has the burden to assert and prove it. N.Y. Penal L.
§ 160.15[[4]]. See, e.g., People v. Gordon, 92 A.D.3d 580, 580, 938
N.Y.S.2d 554, 555 (1st Dep't 2012).


Even if we interpret petitioner's argument to amount, in
substance, to a claim that there was insufficient evidence to
sustain the robbery charge because of the condition of the firearms
found in the vicinity of the robbery, that argument would fail. A
habeas petitioner bears a very heavy burden when challenging a
conviction on the ground of insufficiency of evidence. See, e.g.,
Fama v. Comm'n'r Corr. Servs., 235 F.3d 804, 812 (2d Cir. 2000);
Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). The court is
required to consider the trial evidence in the light most favorable
to the State, upholding the state-court conviction if "any rational
trier of fact could have found the essential elements of the crime
beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319
(1979) (emphasis in original); accord, e.g., Wright v. West, 505
U.S. 277, 296 (1992); Fama, 235 F.3d at 811; Bossett v. Walker, 41
F.3d 825, 830 (2d Cir. 1994). In this regard, we must defer to the
jury's "assessments of the weight of the evidence and the
credibility of witnesses." Maldonado v. Scully, 86 F.3d 32, 35 (2d
Cir. 1996). Thus, a verdict that is based on such an assessment is
not subject to second-guessing by the habeas court, and will not be

34

disturbed. See, e.g., Herrera v. Collins, 506 U.S. 390, 400-02 (1993); Quartararo v. Hanslamaier, 186 F.3d 91, 97 (2d Cir. 1999); accord, United States v. Vasquez, 267 F.3d 79, 91 (2d Cir. 2001); Rosa v. Herbert, 277 F. Supp.2d 342, 347 (S.D.N.Y. 2003). Under this "rigorous standard," a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and it must defer to that resolution. Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994).

When a federal court considers the sufficiency of the evidence for a state conviction, it "must look to state law to determine the elements of the crime." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (quoting Quartararo, 186 F.3d at 97). The relevant state law is generally that which was in effect when petitioner's conviction became final. See Fiore v. White, 531 U.S. 225, 227-28 (2001). Therefore, we must look to the law of New York governing proof of inoperability under N.Y. Penal L. § 160.15[4].

The pertinent question is whether petitioner used an operable firearm at the time he sought to rob the victims in the store. The testimony at trial reflected substantial evidence that one or both

firearms used in the December robbery were functioning at the time

of the robbery. Mr. Malcolm testified that he heard a sound that

appeared to be a shot as he sought to flee from the store by way of

the alleyway. (Tr. 457-58). Similarly, Officers Hernaiz and Sichler

both testified that they had heard two gunshots when they were in

the vicinity of the store at around the time of the robbery or in

its immediate aftermath. (Id. at 457-58, 495-96, 574, 581-82). In

addition, a 911 call was apparently received at about the same time

from someone who reported hearing shots being fired, a report that

in fact was conveyed to Officer Sichler while he was in his patrol

car. (Id. at 495-96). Finally, the police reported that they had

found two spent cartridges in the alleyway that were for a 9 mm.

gun, the very firearm that they located only a few feet from where

Barrington lay when he was discovered in the alley (id. at 15-16,

718-19), and there was forensic evidence that at least one of the

guns had been discharged. (Id. at 519).


    In short, the evidence was ample to permit a reasonable jury

to find that one or both firearms were operable at the time of the

robbery. In this regard we further note that although both guns,

when recovered, were determined not to be operable, that fact is

not inconsistent with prior operability; indeed, given the fact

that petitioner and likely his accomplice both fell ten or fifteen

feet to the alley when they fled the store, their guns might well have been damaged in their fall.

Finally, we note that the Appellate Division addressed the sufficiency of the evidence on this point when it rejected petitioner's Sixth Amendment claim that trial counsel had been ineffective in not moving to dismiss the robbery count based on inoperability. As the Court there noted, "[s]uch a motion would have been futile, because the circumstances explained how the pistols may have been damaged after the robbery, and the evidence that one or both of the pistols had been operable at the time of the robbery was sufficient to warrant submitting the issue to the jury." Barrington, 34 A.D.3d at 342, 824 N.Y.S.2d at 286. This ruling was neither contrary to, nor an unreasonable application of, any well-established Supreme Court law and surely did not rely upon an unreasonable factual premise in view of the trial record. Hence, even if we disagreed with the court's assessment -- which we do not -- habeas relief would be unavailable.

III. Ineffective Trial Counsel

Petitioner next asserts that he was denied the effective assistance of trial counsel. In making this claim, he offers three

criticisms of the attorney's performance -- that "trial counsel botched a dispositive claim raising an affirmative defense of inoperability of the weapons to the underlying charge of first degree robbery", that he "failed to join[] in Respondent's instructions to the Grand Jury" and that he "failed to raise a dispositive speedy trial issue." (Pet. at 8th pg.). Respondent opposes, contending that Barrington failed to exhaust his state-court remedies with respect to his second and third challenges to counsel's performance, and that all of his criticisms are meritless. (Resp.'s Mem. 16-22).

There is no dispute that Barrington's argument about instructions in the grand jury was never pursued in the state courts and hence is unexhausted. See, e.g., Baldwin, 541 U.S. at 29; O'Sullivan v. Boerkel, 526 U.S. 838, 845 (1999). As for the lawyer's refusal to file a speedy-trial motion, Barrington mentioned it in his first 440.10 motion, but when that motion was denied, he never referred to it on his appeal from that denial, and hence it too is unexhausted.[11] Petitioner has no current state-court remedy for these claims, however, since he cannot pursue a second

---

[11] Petitioner's silence on that criticism mirrors Justice Davidowicz's failure to mention the issue in his decision denying the 440.10 motion. (See Curbelo Decl. Ex. 5).

direct appeal, see, e.g., Pence v. Sup't Great Meadow Corr. Facility, 219 F.3d 162, 170 (2d Cir. 2000), and he may not obtain review by way of still another section 440.10 motion in view of the fact that one or both of these versions of his Sixth Amendment claim could have been raised either on his direct appeal or by way of his first 440.10 motion and the appeal from its denial. N.Y. Crim. Proc. L. §§ 440.10(2)(a) & (3)(c). Accordingly, these two versions of his Sixth Amendment claim must be deemed exhausted but subject to procedural-bar analysis. See, e.g., Gray v. Netherland, 518 U.S. 152, 161 (1996); St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004). That analysis compels rejection of both versions of the claim as procedurally barred.

Under procedural-bar rules, we may not review the merits of the claim unless petitioner can overcome his procedural default by either "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or [establishing] . . . that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Fama, 235 F.3d at 809. Barrington cannot meet either of these tests.

To demonstrate cause, petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," for example, by showing that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials . . . made compliance impracticable." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986) (citing <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984), and quoting <u>Brown v. Allen</u>, 344 U.S. 443, 486 (1953)). A petitioner may also satisfy the cause requirement by demonstrating that the failure of his attorney to comply with state procedural rules denied him constitutionally adequate representation. <u>See</u> <u>Restrepo v. Kelly</u>, 178 F.3d 634, 640 (2d Cir. 1999). He cannot invoke this ground, however, unless he first asserted an equivalent independent Sixth Amendment claim in state court and exhausted his state-court remedies with respect to that claim. <u>See</u>, <u>e.g.</u>, <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-52 (2000). In any event, it bears emphasis that "[a] defense counsel's ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 91 (2d Cir. 2001).

40

The second exception -- that failure to review petitioner's claims would result in a fundamental miscarriage of justice -- is reserved for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496; accord Sawyer v. Whitley, 505 U.S. 333, 339 n.6 (1992). To establish "actual innocence," petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)) (internal quotation marks omitted). In this context, "actual innocence means factual innocence, not mere legal insufficiency." Id. at 623. Furthermore, the petitioner must support his claim "'with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.'" Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004) (quoting Schlup, 513 U.S. at 324); see also Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002).

Petitioner's obscure reference to counsel's non-participation in grand-jury instructions is entirely unenlightening, but whatever may be the point that he is trying to make, he offers no basis to

41

infer that this point could not have been made on his direct appeal, and he also fails to demonstrate that the purported omission of counsel -- whatever it may have been -- affected the result of his prosecution. In short, he demonstrates neither cause nor prejudice. Petitioner also fails to make a showing that he was in fact innocent and that the purported error of counsel led to his conviction, and hence he cannot demonstrate that the refusal to address the merits of this aspect of his Sixth Amendment claim would cause a fundamental miscarriage of justice.

As for Barrington's reference to the attorney's failure to pursue a speedy-trial claim, again this argument could presumably have been raised on Barrington's direct appeal, and Barrington does not make a showing that would amount to cause.[12] Moreover, on his current application he proffers no details of the basis for his hypothesized speedy-trial argument, and thus fails to demonstrate that the underlying purported omission of counsel caused him

---

[12] We note that petitioner filed a coram nobis motion, attacking the adequacy of his appellate counsel, in part because counsel did not invoke the arguments that Barrington had mentioned in his pro se section 440.10 motion, which included the speedy-trial point. (See Pet's Traverse -- annexing coram nobis application (AC#98 et seq.)). In that coram nobis application, however, Barrington made no showing to suggest the basis for a speedy-trial motion or to show that it would have had any chance of success. See Edwards, 529 U.S. at 451-52.

prejudice. Finally, he also fails to demonstrate that he was factually innocent of the charges, much less that the underlying error that he would target here led to his conviction.

In short, both of these versions of petitioner's Sixth Amendment claim are procedurally barred. As for the merits of his remaining Sixth Amendment theory -- premised on trial counsel's failure to move to dismiss the first-degree robbery count from the December robbery -- it plainly fails on the merits for reasons already discussed.

As we have noted, the Appellate Division properly observed that a motion to dismiss would have been futile, since the evidence of operability of the firearms at the time of the robbery sufficed to make this a jury question. We also note that although defense counsel did not argue the affirmative defense in his summation, there was good enough reason for him not to do so. The central focus of the defense was to deny petitioner's involvement in the robbery. (See, e.g., Tr. 766-70). For counsel to have pressed overtly the affirmative defense of inoperability could well have detracted from that theme, and hence counsel could have permissibly decided to keep the juror's focus on the question of non-involvement. Moreover, he could do so without surrendering the

43

affirmative defense because he had succeeded in persuading the judge to instruct the jury on that defense.

In sum, there is nothing of substance to petitioner's attempt to undermine his conviction by criticizing his lawyer for not moving to dismiss based on the affirmative defense, or to blame the lawyer because the jury chose to credit the evidence that suggested that at least one of the guns was working at the time of the robbery.

IV. <u>The Trial Court's Subject-Matter Jurisdiction</u>

Petitioner's next claim is articulated as follows: "the lower court lacked jurisdiction of the subject matter over Petitioner, and the lower court's factual finding and question of law [sic.] were not supported by the record presented in the state court proceeding denying Petitioner's both 440. application[s] [sic.] was objective[ly] unreasonable in light of Supreme Court precedence issuance and remedied by <u>habeas</u> relief." (Pet. 9th-10th pgs.). As cryptic as this reference may be, respondent persuasively suggests that it refers to an argument that Barrington advanced in his second 440.10 motion to the effect that the trial court had lacked jurisdiction over his case because he had not been "properly

44

affirmative defense because he had succeeded in persuading the judge to instruct the jury on that defense.

In sum, there is nothing of substance to petitioner's attempt to undermine his conviction by criticizing his lawyer for not moving to dismiss based on the affirmative defense, or to blame the lawyer because the jury chose to credit the evidence that suggested that at least one of the guns was working at the time of the robbery.

IV. The Trial Court's Subject-Matter Jurisdiction

Petitioner's next claim is articulated as follows: "the lower court lacked jurisdiction of the subject matter over Petitioner, and the lower court's factual finding and question of law [sic.] were not supported by the record presented in the state court proceeding denying Petitioner's both 440. application[s] [sic.] was objective[ly] unreasonable in light of Supreme Court precedence issuance and remedied by habeas relief." (Pet. 9th-10th pgs.). As cryptic as this reference may be, respondent persuasively suggests that it refers to an argument that Barrington advanced in his second 440.10 motion to the effect that the trial court had lacked jurisdiction over his case because he had not been "properly

44

indicted by a Grand Jury.". (Resp.'s Mem. 23; see Curbelo Decl. Ex. 9 at 24-29). The trial court denied this aspect of his motion as procedurally barred since petitioner could have raised it on his first 440.10 motion and yet failed to do so. (Curbelo Decl. Ex. 14 at 9 (citing N.Y. Crim. Proc. L. § 440.10[3][c])).

The claim is procedurally barred from review here. Justice Davidowicz's ruling rested on an independent state-law ground since the cited section of the Criminal Procedure Law specifies that "the court may deny a motion to vacate a judgment when: . . . (c) upon previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so." N.Y. Crim. Proc. L. § 440.10(c)(3). The court's reliance on that provision was also adequate, since the New York courts rely with some consistency upon that section. See, e.g., People v. Lawrence, 38 Misc.3d 1204(A), 2013 WL 6720773, at *3 (Sup. Ct. N.Y. Cty. Dec. 26, 2012); People v. Grajales, 37 Misc.3d 1223(A), 2012 WL 3844741, at *3 (Sup. Ct. Kings Cty. Nov. 13, 2012); People v. Neal, 37 Misc.3d 1201(A), 2012 WL 4373090, at *1-2 (Sup. Ct. Bronx Cty. Sept. 25, 2012); see also McKethen v. Mantello, 292 F.3d 119, 122-23 (2d Cir. 2002); Young v. McGinnis, 411 F. Supp.2d 278, 314-15 (E.D.N.Y. 2006); Kemp v. Conway, 2005 WL 107096, at *7 (S.D.N.Y. Jan. 14, 2005). Petitioner

45

offers no showing of cause for his omission of the claim from his original 440.10 motion, and he makes no effort to demonstrate actual innocence as a basis for arguing that failure to consider this claim would trigger a fundamental miscarriage of justice.

Finally, we note in any event that petitioner's underlying argument is completely meritless, indeed incoherent. It rests on a series of assertions that include the following: (1) that Justice Davidowicz had not taken an oath of office for a second term at the time of sentencing him in 1992; (2) that New York is "a subsidiary" of the United States; and (3) that the Uniform Commercial Code somehow bars Barrington's prosecution. In short, whether or not barred, the claim is baseless.

V. <u>Desire to Proceed Pro Se</u>

Petitioner next complains that the trial court coerced him into keeping his appointed defense counsel rather than proceeding <u>pro se</u>, as he claims he wanted to do. (Pet. ¶¶ 26-27).[13] Respondent asserts that the claim is procedurally barred and meritless.

---

[13] In the same section of Barrington's petition he refers to an alleged violation of his rights under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). We treat that claim separately, as petitioner also did in the final section of his petition.

(Resp.'s Mem. 26-30).

Petitioner invoked this argument in his addendum to his second 440.10 motion. (Curbelo Decl. Ex. 12 at 6, 10). The trial judge denied the claim as procedurally barred since he could have raised it in his first 440.10 motion and also held in the alternative that the claim was meritless since Barrington had withdrawn the request for self-representation after a proper colloquy with the court and consultation with his attorney. (Id. Ex. 14 at 6-7).

For reasons already explored with respect to petitioner's jurisdictional argument, the ruling of Justice Davidowicz rests on an independent and adequate ground, and petitioner fails to satisfy either the cause-and-prejudice test or the fundamental-miscarriage-of-justice criterion of actual innocence. Accordingly this claim is also procedurally barred.

In any event the claim is meritless. The record clearly reflects, as the trial judge found, that the court, upon being apprised of Barrington's request for pro se status, gave him a litany of warnings as to the perils of such a course. (Tr. 271-85). These warnings were required by New York caselaw, see People v. Crampe, 17 N.Y.3d 469, 482, 932 N.Y.S.2d 765, 773 (2011) (citing

47

People v. Arroyo, 98 N.Y. 2d 101, 104, 745 N.Y.S.2d 796, 798
(2002)), and, of necessity, do not amount to coercion. In this
regard, when a criminal defendant is considering surrendering his
right to counsel, the court -- whether federal or state -- is
required to ensure that he has a proper understanding of the
benefits of professional representation and the risks of dispensing
with it. See, e.g., People v. Agard, 107 A.D.3d 613, 613, 968
N.Y.S.2d 479, 479 (1st Dep't June 27, 2013) (quoting inter alia
Crampe, 17 N.Y.3d at 481, 932 N.Y.S.2d at 773; United States v.
Barton, 712 F.3d 111, 118-19 (2d Cir. 2013)).  That is all that
Justice Davidowicz did, and in the wake of that colloquy and
Barrington's further consultation with his attorney (Tr. 286), he
withdrew his application for self-representation. (Id. at 286-89).


    In short, the record reflects that petitioner's rights in this
regard were respected, and his interests in a fair trial protected.
The claim is groundless.


    VI. Brady and Rosario Violations


    Barrington's remaining claim is that his rights under Brady
and Rosario were violated when the State failed to turn over to his
attorney a quantity of documents that related to the robberies and

his arrest. As we have noted, in connection with petitioner's second section 440.10 motion the trial judge reviewed a substantial quantity of police reports and other documents that petitioner had obtained following his trial and appeal, and determined that some were Rosario materials, but that none of the documents were sufficiently material to warrant relief.

Although the New York Court of Appeals requires production by the prosecutor of any documents reflecting statements by witnesses, that requirement is not of federal constitutional dimension and is not compelled in the state courts by any federal law. Accordingly, a violation of that rule in state court does not provide a basis for habeas relief. See, e.g., Reynoso v. Artus, 722 F. Supp.2d 394, 403 (S.D.N.Y. 2010); Cordero v. Rivera, 677 F. Supp.2d 684, 699 (S.D.N.Y. 2009); Collins v. Artus, 496 F. Supp.2d 305, 317 (S.D.N.Y. 2007).

As for the Brady rule, in Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment[.]" 373 U.S. at 87. To establish a Brady violation, the petitioner must satisfy three tests. First, he must show that the evidence at issue was favorable

49

to him, because it is either exculpatory or impeaching. <u>See</u>, <u>e.g.</u>, <u>Strickler v. Greene</u>, 527 U.S. 263, 282-83 (1999). Second, he must demonstrate that the evidence was suppressed by the prosecution. <u>Id.</u> Finally, the evidence must be material. <u>See</u> <u>id.</u>; <u>Kyles v. Whitley</u>, 514 U.S. 419, 433 (1995).

Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). The reasonable-probability standard does not require "demonstration by a preponderance of the evidence that disclosure of the suppressed evidence would have resulted in the defendant's acquittal[,]" nor must the defendant "demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." <u>Kyles</u>, 514 U.S. at 434-35. Rather, the question is whether the accused "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." <u>Id.</u> at 434. In making that determination, the court must analyze the potential impact of the suppressed evidence "collectively, not item-by-item." <u>Id.</u> at 436. Finally, if the court decides that the suppressed evidence was material, the defendant is deemed to have been prejudiced, obviating the need for harmless-error review. <u>Id.</u>

50

When petitioner asserted his <u>Brady</u> claim before the trial court, Justice Davidowicz reviewed each of the many documents that were said to have been withheld, and found that none was material to petitioner's case. More specifically, he concluded that the complaint reports, which contained descriptions of the statements of the pertinent witnesses, "were in every material respect consistent with the witnesses' trial testimony." (Curbelo Decl. Ex. 14 at 16). The judge went on to conclude that petitioner could not meet even the more liberal standard of materiality imposed by the New York courts. (<u>Id.</u>).[14]

Petitioner fails to demonstrate that this conclusion was wrong, either factually or legally, much less that the assessment by the trial court was either contrary to, or an unreasonable application of, settled Supreme Court law. All that he does is to complain about the prior withholding of documents, and suggest in vague terms that he should be given access to additional or

---

[14] The New York Court of Appeals has held that, in contrast to the generally applicable materiality test derived from <u>Brady</u> and <u>Bagley</u>, 473 U.S. at 682 -- that there is a reasonable probability that the withholding of the evidence affected the outcome of the trial -- the test is relaxed to a required showing of a "reasonable possibility" if the defendant specifically requested the material that the State then failed to produce. <u>People v. Vilardi</u>, 76 N.Y.2d 67, 72-77, 556 N.Y.S.2d 518, 520-24 (1990).

51

unredacted documents. (See April 28, 2011 letter to the court from Petitioner; Traverse at 34th-35th pgs.). He completely fails to undermine, or even meaningfully address, the trial court's conclusion that the withheld reports and the testimony were consistent "in every material respect". (Curbelo Decl. Ex. 14 at 16). That being the case, it cannot be said that the contents of these documents undermine the reliability of the verdict, that is, deprived it of being "worthy of confidence." Bagley, 514 U.S. at 434.[15]

VII. Petitioner's Discovery and Hearing Requests

At several points during the pendency of this case Barrington sought an order authorizing discovery and the conducting of an evidentiary hearing. We denied the initial requests for these forms of relief by endorsed orders in 2011 for lack of any showing of a justification given the terms of the federal habeas rules governing discovery and the statutory provision referring to the holding of evidentiary hearings. (See Order dated April 1, 2011 (Dkt. No. 22); Endorsed Orders dated April 21, 2011 and May 2, 2011 (Dkt. Nos. 23

_____

[15] It bears mention that petitioner also fails to demonstrate that the documents were "favorable" to him, within the meaning Brady and its progeny.

52

& 25)). More recently petitioner has renewed these requests (see Jan. 14, 2013 & Feb. 4, 2013 letters to the Court from Petitioner), which we again deny.

Petitioner was provided what appears to have been the full set of relevant documents previously withheld when he made a request under the New York FOIL. Although he now contends that some documents were not included in the FOIL production, he specifies only items that either were provided -- notably, witness statements (see Jan. 14, 2013 letter at 3), which Justice Davidowicz reviewed in assessing petitioner's second 440.10 motion -- or are apparently non-existent[16] or not relevant or necessary to the claims that he asserts in this proceeding.[17]

---

[16] Petitioner refers to an arrest warrant (Jan. 14, 2013 letter at 3), but in the case at issue in this proceeding it is plain that he was arrested on December 22, 2001 without a warrant. Any warrant for an arrest in another case has not been shown to be relevant to his 2003 conviction or to this proceeding. Similarly, he mentions a firearm-discharge report (see Pet.'s Feb. 21, 2011 letter to the court at 13), but there is no evidence that the police fired at him or that such a report exists. (See, e.g., Tr. 257-58).

[17] To the extent that Barrington may be suggesting that he was not accorded full production of documents pursuant to his FOIL request, his remedy would have been to pursue an Article 78 proceeding in state court or possibly to raise the issue with the trial judge on his second 440.10 motion. There is no indication, however, that petitioner sought to pursue either route.

53

As for Barrington's request for an evidentiary hearing, the short answer is that he fails to meet the requirements of 28 U.S.C. § 2254(e)(2), which specifies that

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -
>
> (A) the claim relies on -
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner fails to satisfy any of these criteria.

Barrington asks for a hearing to show that he was never arraigned, that he did not waive his right to testify before the grand jury and that the prosecutor failed to comply with Crim. Proc. L. § 180.80 in his handling of the paperwork pertaining to the filing of the grand jury indictment. (Jan. 14, 2013 letter at 2-3). The first two points are not in dispute, thus obviating the need for any hearing on them, and in any event, for reasons already

54

discussed, none of these factual contentions, however resolved, implicate any federal right, which is a predicate for habeas relief.

Finally, we note that in Barrington's recent submissions, he alludes to a claim that his counsel never advised him of a plea offer that would have involved a ten-year or twelve-year prison sentence, which he asserts he would have accepted if he had known about it. (Jan. 14, 2013 letter at 3; Feb. 4, 2013 letter at 2, 6). He never mentioned this complaint about his counsel in state court, and hence it is unexhausted. In any event he offers no evidentiary basis for it -- indeed, the responsive submission by respondent reflects that no such offer was ever extended (Jan. 31, 2013 letter to the Court from Ass't. Dist. Atty Curbelo at 2 & attach.) -- and hence he cannot satisfy the cited statutory requirements for triggering an evidentiary hearing on this contention, requirements that include a showing <u>inter alia</u> of discovery of new evidence and due diligence.

## CONCLUSION

For the reasons stated, we recommend that the writ be denied and the petition dismissed with prejudice. We further recommend

55

that the court not issue a certificate of appealability, in the absence of any issue warranting appellate review. See Slack v. McDaniel, 529 U.S. 473, 484 (2000); 28 U.S.C. 2253(c).


Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable George B. Daniels, Room 1310, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

56

Dated: New York, New York
       August 14, 2013

                                MICHAEL H. DOLINGER
                                UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation & Memorandum and
Order have been mailed today to:

Mr. Henry Barrington
# 03-A-3724
Five Points Correctional Facility
State Route 96
P.O. Box 119
Romulus, New York 14541

Rafael A. Curbelo, Esq.
Assistant District Attorney
 for Bronx County
198 East 161st Street
Bronx, New York 10451